**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOANN BLADES, INDIVIDUALLY AND** | § | |
| **ON BEHALF OF OTHERS SIMILARLY** | § | |
| **SITUATED** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:06CV1000-LG-JMR** |
| | § | |
| **COUNTRYWIDE HOME LOANS, INC.,** | § | |
| **COUNTRYWIDE FINANCIAL** | § | |
| **CORPORATION, and BALBOA** | § | |
| **INSURANCE COMPANY** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER IS BEFORE THE COURT on the Motion for Judgment on the Pleadings

[37] filed by Countrywide Financial Corporation ("CFC"), the Motion for Partial Judgment on

the Pleadings [39] filed by Countrywide Home Loans, Inc. ("CHL"), and the Motion for Partial

Judgment on the Pleadings [41] filed by Balboa Insurance Company.  Plaintiff JoAnn Blades has

responded to Defendants' Motions, and Defendants have replied.  Upon reviewing the

submissions of the parties and the relevant law, the Court finds that CFC's Motion should be

granted in part and denied in part, and that CHL and Balboa's Motions should be denied.

**FACTS**

Defendant CHL financed the purchase of Plaintiff's home, which was located at 1472

Georgia Place, Gulfport, Mississippi.  Plaintiff asserts that her home and all of her personal

property was destroyed by Hurricane Katrina on August 29, 2005, and that only the foundation of

the property remained.   Due to the destruction of the property, Plaintiff's wind and hail coverage

on the home was canceled.  CHL requested that Plaintiff obtain a new insurance policy covering

her home, but Plaintiff claims she and her insurance agent repeatedly informed CHL that the

home had been completely destroyed.  Thereafter, CHL force-placed insurance on Plaintiff's property, purchasing the policy from Defendant Balboa Insurance Company.  Balboa and CHL are both wholly-owned subsidiaries of Defendant CFC.  CHL paid for the Balboa policy using funds from Plaintiff's escrow account.  Plaintiff filed this lawsuit against CHL, CFC, and Balboa, asserting claims of civil conspiracy, conversion, unjust enrichment, and fraud/deceit.  Plaintiff alleges that no insurance policy was truly issued for the property, and that no insurance should have been obtained on the property since there was nothing left to insure.  CHL, CFC, and Balboa argue that Plaintiff's civil conspiracy claim must be dismissed because a parent company cannot conspire with its wholly-owned subsidiary.  CFC also asserts that Plaintiff's remaining claims should be dismissed because a parent company cannot be held liable for the acts of its subsidiaries, and alternatively, that those claims are insufficient on their face.

DISCUSSION

STANDARD OF REVIEW

The standard for deciding a motion for judgment on the pleadings is the same as that for a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).  *Johnson v. Johnson*, 375 F.3d 503, 529 (5th Cir. 2004).  When ruling on a motion to dismiss for failure to state a claim, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  In order to avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S.---, 127 S. Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact.)"  *Id.* at 1965.

CIVIL CONSPIRACY

Defendants argue that Plaintiff's civil conspiracy claims should be dismissed pursuant to

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).  In *Copperweld*, the Court held:

> [T]he coordinated activity of a parent and its wholly owned subsidiary must be
> viewed as that of a single enterprise for purposes of §1 of the Sherman Act.  A
> parent and its wholly owned subsidiary have a complete unity of interest.  Their
> objectives are common, not disparate; their general corporate actions are guided
> or determined not by two separate corporate consciousnesses, but one.  They are
> not unlike a multiple team of horses drawing a vehicle under the control of a
> single driver.  With or without a formal "agreement," the subsidiary acts for the
> benefit of the parent, its sole shareholder.  If a parent and a wholly owned
> subsidiary do "agree" to a course of action, there is no sudden joining of
> economic resources that had previously served different interests, and there is no
> justification for §1 scrutiny.

*Copperweld*, 467 U.S. at 771.  The Court reasoned that "[a]ntitrust liability should not depend on

whether a corporate subunit is organized as an unincorporated division or a wholly owned

subsidiary."  *Id.* at 772.  The Court further explained that the Sherman Act "contains a basic

distinction between concerted and independent action," in that concerted activity is judged more

sternly than unilateral activity.[1]  *Id.* at 767-68.  As a result of this reasoning, the Court held that

the officers of a single firm are not separate economic actors and therefore are legally incapable

of conspiring with each other pursuant to Section 1 of the Sherman Act.  *Id.* at 769.  The Court

also held that a wholly owned subsidiary and its parent company are not considered separate

---

[1]Concerted activity is judged under Section 1 of the Sherman Act, while unilateral activity is
judged pursuant to Section 2 of the Act.  *Copperweld*, 467 U.S. at 767-68.  "In part because it is
sometimes difficult to distinguish robust competition from conduct with long-run anti-competitive
effects, Congress authorized Sherman Act scrutiny of single firms only when they pose a danger of
monopolization."  *Id.* at 768.

actors who can conspire with each other pursuant to Section 1 of the Sherman Act. *Id.* at 771. The doctrine set forth in *Copperweld* is commonly referred to as the intra-corporate conspiracy doctrine. The Fifth Circuit has arguably extended the ruling set forth in *Copperweld*, holding that wholly owned subsidiaries of the same parent corporation cannot conspire with each other in violation of the Sherman Act. *Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984).

The parties do not dispute that Mississippi law applies in this lawsuit. "Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). The Mississippi Supreme Court has never discussed or applied the intra-corporate conspiracy doctrine. Plaintiffs point to one case, *MIC Life Insurance Co. v. Hicks*, in which the Mississippi Supreme Court reversed a directed verdict against a parent company on a plaintiff's conspiracy claim, holding that while there was evidence of a conspiracy between a parent company and subsidiary, the evidence was not sufficient to warrant taking the issue out of the province of the jury. *MIC Life Ins. Co. v. Hicks*, 825 So. 2d 616, 621 (¶11) (Miss. 2002). The intra-corporate conspiracy doctrine was apparently never asserted in the *Hicks* lawsuit, since the Supreme Court did not address the doctrine in its opinion. *See id.* Defendants assert that the United States District Court for the Southern District of Mississippi, while applying Mississippi law, has applied the intra-corporate conspiracy doctrine to civil conspiracy claims. *See Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 843-44 (S.D. Miss. 2004). In *Frye*, the Court held: "Under the intra-corporate conspiracy doctrine, '[a] corporation cannot conspire with itself any

more than a private individual can, and it is the general rule that the acts of agents are the acts of the corporation.'" *Frye*, 307 F. Supp. 2d at 843.  Similarly, in *Cooper v. Drexel Chemical Co.*, the Court held that "[w]hen individual defendants are not shown to have acted outside of their employment capacities, they are incapable of conspiring with their corporate employer." *Cooper v. Drexel Chem. Co.*, 949 F. Supp. 1275, 1285 (N.D. Miss. 1996).  The Courts in *Frye* and *Cooper* did not address whether wholly owned subsidiaries can conspire with parent companies under Mississippi law, and only held that a group of employees could not conspire with their employer.  *See id.*; *see also Frye*, 307 F. Supp. 2d at 843.  Therefore, the issue of whether two wholly owned subsidiaries are legally capable of conspiring with each other under Mississippi law has never been directly addressed.

Courts in other jurisdictions disagree regarding whether the intra-corporate conspiracy doctrine should be extended beyond the scope of the Sherman Act.  *See, e.g., Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (applying the intra-corporate conspiracy doctrine to a civil rights claim against a school board); *Seeco, Inc. v. Hales*, 22 S.W. 3d 157, 173 (Ark. 2000) (refusing to apply the doctrine to civil conspiracy claims against wholly owned subsidiaries of the same parent company); *Shared Commc'n Serv. v. Bell Atl. Prop.*, 692 A.2d 570,574 (Pa. Super. Ct. 1997) (holding that the closer the relationship between corporate parent and subsidiaries, the more likely it is that they cannot be capable of conspiracy to tortiously interfere with contractual relations); *Golden v. Daiwa Corp.*, No. 3:96CV0776L, 2000 WL 251736 at *3 (N.D. Tex. Mar. 6, 2000) (noting that the Texas courts are divided on the issue of whether a parent company can conspire with its subsidiary); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 (7th Cir. 1989) (holding that the intra-corporate conspiracy doctrine does not apply to RICO

claims); *Stathos v. Bowden*, 728 F.2d 15, 20-21 (1st Cir. 1984) (refusing to apply the intra-corporate conspiracy doctrine in a gender discrimination case); *Fogie v. THORN Am., Inc.*, 190 F.3d 889, 899 (8th Cir. 1999) (holding that the intra-corporate conspiracy doctrine applies to RICO claims); *O.H. v. Oakland Unified Sch. Dist.*,  No. C-99-5123 JCS, 2000 WL 33376299 at *8 (N.D. Cal. 2000) (refusing to apply the intra-corporate conspiracy doctrine to a sexual harassment claim).  Nevertheless, it is not necessary for the Court to determine whether the intra-corporate conspiracy doctrine should be applied to all civil conspiracy claims under Mississippi law, due to the facts asserted in this lawsuit.

Plaintiff asserts that CHL purchased an insurance policy from Balboa on her destroyed home and required her to pay for the policy.  The separate, corporate status of these subsidiaries enabled this transaction between the defendants, and it was this transaction that allegedly harmed the Plaintiff.  If CHL was capable of purchasing an insurance policy from Balboa, it was capable of entering a civil conspiracy with Balboa.  *See Hales*, 22 S.W. 3d at 173 ("It seems logical to us that if the corporate subsidiaries were separate enough to contract with each other, as appellants maintain, they were sufficiently separate to engage in a civil conspiracy.")  Furthermore, the separate nature of these subsidiaries prevents the Court from holding that CFC, the parent company, should be considered the same entity as both subsidiaries.  Specifically, if CFC, CHL, and Balboa were considered the same entity under Mississippi law, CHL could not purchase insurance from Balboa or enter into a contract with Balboa.  There would be no need for such insurance, as CHL would be protecting its interest in Plaintiffs' property by purchasing insurance from itself.  Therefore, under these specific facts, Balboa, CFC, and CHL were separate entities, capable of engaging in a civil conspiracy.  Therefore, Defendants' Motions to Dismiss Plaintiff's

civil conspiracy claims are denied.[2]

**CONVERSION**

CFC also argues that Plaintiff's conversion claim should be dismissed because money is an intangible that cannot be converted.[3]  The Mississippi Supreme Court has held that "to make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand."  *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 68 (¶50) (Miss. 2004) (quoting *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998)).  The only court to address the issue of whether intangibles can be converted under Mississippi law has explained: "The reported cases in Mississippi reflect the view that an action for conversion is available for wrongful interference with tangible items of personal property and those 'intangible rights that are customarily merged in, or identified with some document.'" *DirecTV, Inc. v. Hubbard*, No. 2:03CV261-P-D, 2005 WL 1994489 at *4 (N.D. Miss. Aug. 17, 2005) (quoting 5 Jeffrey Jackson and Mary Miller, *Mississippi Practice Series Encyclopedia of Mississippi Law* §41:88 (2001)).  In *Hubbard*, the Court held that satellite transmissions are not tangible and therefore cannot be the subject of a conversion.  *Hubbard*, 2005 WL 1994489 at *4.

---

[2] Since the Court has found that Plaintiff has stated a claim of civil conspiracy, it is not necessary to address CFC's argument that Plaintiff's conversion, fraud, and unjust enrichment claims should be dismissed because a parent company cannot be held liable for the acts of its subsidiary.  Specifically, co-conspirators are held liable for the acts of other co-conspirators under Mississippi law.  *See S. Bus Lines, Inc. v. Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees*, 38 So. 2d 765, 769 (Miss. 1949) ("where two or more persons conspire together the conspiracy makes the wrongful acts of each the joint acts of all of them.").

[3]Although Blades asserts similar claims against Balboa and CHL, these defendants have not sought dismissal of Blades' conversion, unjust enrichment, and fraud claims.

In support of its Motion, CFC argues that insurance premiums cannot be the subject of a conversion.  *See Austin v. Indep. Life & Accident Ins. Co.*, 370 S.E.2d 918, 921-22 (S.C. Ct. App. 1988).  However, the Court in *Austin* noted that money may be the subject of conversion when it is capable of being identified, citing cases concerning the misuse of funds that were held in an account by a bank, but held that the insurance premiums at issue could not be subject to conversion since the premiums were not separately maintained from other premiums.  *Austin*, 370 S.E.2d at 162 (citing *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116 (S.C. 1975)). Other courts have also distinguished between funds separated into an account for a specific purpose from those that are not designated or are intermingled with other funds.  *See, e.g., Hensley v. Poole*, 910 So. 2d 96 (Ala. 2005) ("money directly traceable to a special account . . . is sufficiently identifiable to support an action for conversion"); *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. 1981) (holding that funds that have been placed in the custody of another for a specific purpose can be the subject of a conversion); *Cambridge Mgmt. Group v. Robert A. Kosseff & Assoc., P.C.*, No. 05-3402 (JAP), 2007 WL 2084895 at *3 (D.N.J. July 18, 2007) ("The plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for plaintiff's benefit.")

Blades asserts in her Complaint that the premiums for the insurance policy were wrongfully taken from an escrow account, and that all defendants conspired to commit this conversion.  (Compl. at 4, 7).  Since Blades has alleged that funds set aside in an account for a specific purpose were wrongfully taken by CFC and the other defendants, she has set forth sufficient facts to state a claim of conversion that is plausible on its face.  *See Bell Atl Corp.*, 127

S. Ct. at 1974.

**UNJUST ENRICHMENT**

CFC also argues that Plaintiff's unjust enrichment claim should be dismissed, arguing that "[t]he phrase *'unjust enrichment' does not describe a theory of recovery*, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002) (quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* §9 (2002)). The Mississippi Court of Appeals has explained the following concerning unjust enrichment claims:

> The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Kersey v. Fernald*, 911 So. 2d 994, 997 (¶13) (Miss. Ct. App. 2005); *see also, Johnston v. Palmer*, No. 2006-CA-00428-COA, 2007 WL 2366351 at *8 (¶22) (Miss. Ct. App. Aug. 21, 2007) (discussing requirements for collecting under an unjust enrichment theory of recovery); *Powell v. Campbell*, 912 So. 2d 978, 982 (¶14) (Miss. 2005) (discussing unjust enrichment and restitution claims). In *Kersey*, the Court of Appeals held that the defendants had been unjustly enriched and affirmed the lower court's judgment in favor of the plaintiff. *Kersey*, 911 So. 2d at 997 (¶13). Therefore, it appear that Mississippi courts have recognized the existence of an unjust enrichment theory of recovery.

**FRAUD**

CFC also argues that Plaintiff's fraud claim should be dismissed because Plaintiff has not satisfied the pleading requirements of fraud set forth by FED. R. CIV. P. 9(b).  A claim of fraud must be pled with the particularity required by FED. R. CIV. P. 9(b).  *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).  Rule 9(b) requires "the who, what, when, where, and how" of a fraud claim to be laid out.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir.1997).

"Fraud may be manifested in multiple ways."  *Mabus v. St. James Episcopal Church,* 884 So.2d 747, 762 (Miss. 2004).  The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.  *Owens Corning v. R.J. Reynolds Tobacco Co.,* 868 So.2d 331, 343 (Miss. 2004).

CFC asserts that Plaintiff has not asserted a fraud claim because she has not set forth any facts that would tend to show that she reasonably relied on the truth of Defendants' representations in that "her Complaint as a whole is based upon the premise that she was the passive victim of some malfeasance."  (Def.'s Mem. at 13).

In support of her fraud claim, Plaintiff asserts that Defendants:

willfully, intentionally and fraudulently, misrepresented certain facts to Blades and other owners/borrowers/mortgagors in that these owners/borrowers/mortgagors were advised that notwithstanding the fact that a structure may be totally destroyed or nonexistent, they are compelled under the terms of the mortgage/first deed of trust to provide and pay for

-10-

homeowners insurance coverage.

(Compl. at 8).  Plaintiff's Complaint further alleges that premiums were taken from her escrow account in order to purportedly fund insurance coverage on her destroyed home.  (Compl. at 4).  Plaintiff also asserts that no insurance policy was truly obtained on her home, despite the deductions from her escrow account.  (Compl. at 3-4).  Plaintiff does not allege that she relied on the representations made by Defendants, and only asserts that the actions of Defendants support a class wide presumption of reliance.  (Compl. at 9).  In the Court's opinion, these statements do not meet the particularity requirements of  FED. R. CIV. P. 9(b).  Plaintiff shall therefore be given an opportunity to amend her Complaint to correct this deficiency.

   **IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Judgment on the Pleadings [37] filed by Countrywide Financial Corporation is **GRANTED** as to Plaintiff's fraud claim, and is **DENIED** in all other respects.  Plaintiff is granted leave to amend her Complaint to correct the deficiency in her fraud claim.

   **IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Partial Judgment on the Pleadings [39] filed by Countrywide Home Loans, Inc., and the Motion for Partial Judgment on the Pleadings [41] filed by Balboa Insurance Company are **DENIED**.

   **SO ORDERED AND ADJUDGED** this the 18th day of September, 2007.


   _s/ Louis Guirola, Jr._

   LOUIS GUIROLA, JR.
   UNITED STATES DISTRICT JUDGE