IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOANN BLADES, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED | § § § § | PLAINTIFFS |
| v. | § § | Civil Action No. 1:06CV1000-HSO-JMR |
| COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE FINANCIAL CORPORATION; BALBOA INSURANCE COMPANY; NEWPORT INSURANCE COMPANY; and NEWPORT MANAGEMENT CORP. | § § § § § § § | DEFENDANTS |

MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS MATTER COMES BEFORE THE COURT on the Motion for Class Certification [212] filed by Plaintiff, JoAnn Blades ["Blades"]. This case was reassigned to the undersigned after oral argument was held regarding Blades' Motion. The Court has conducted a thorough and independent review of the record, the briefs and submissions of the parties, and the transcript of the hearing on the Motion, and has determined that an additional hearing is not necessary. For the reasons that follow, the Court finds that Blades' Motion for Class Certification must be denied.

I. FACTS

Defendant Countrywide Home Loans, Inc. ["CHL"], financed the purchase of Blades' home, which was located at 1472 Georgia Place in Gulfport, Mississippi. Blades asserts that her home was reduced to a slab and all of her personal property destroyed when Hurricane Katrina struck the Mississippi Gulf Coast in 2005. Due

to the destruction of the property, Blades' wind and hail coverage on the home was canceled. CHL asked Blades to obtain a new insurance policy covering her home. She claims that she and her insurance agent repeatedly informed CHL that the home had been completely destroyed. However, Defendant Newport Management, while allegedly acting on behalf of CHL, force-placed insurance coverage on Blades' home through Defendant Newport Insurance. CHL paid for the Newport policy using funds from Blades' escrow account.

Blades filed this lawsuit against CHL, Newport Insurance Company, Newport Management, Balboa Insurance Company, and Countrywide Financial Corporation, asserting claims for civil conspiracy, conversion, unjust enrichment, and fraud/deceit. Blades asserts that no insurance coverage should have been placed on the property after the storm because there was nothing left to insure. She has filed a Motion for Class Certification and has proposed the following class definition:

> those residents of the state of Mississippi who own or owned certain real property and/or improvements located in the ten-county area established by the Court, which property is or was encumbered by a mortgage or first deed of trust held by CHL, or serviced by CHL, in which the owner/borrower/mortgagor was compelled to pay premiums because of force-placed hazard insurance issued by CHL, through its affiliate Newport Management, with Newport Insurance Company, a subsidiary of [Countrywide Financial Corporation], when the home or structure was totally destroyed, reduced to a slab or heavily damaged and uninhabitable as a result of Hurricane Katrina.

Pl.'s Mem. at pp. 3-4.

The ten Mississippi counties that Blades wishes to include in the class

definition are: Hancock, Harrison, Jackson, Stone, Pearl River, George, Lamar, Forrest, Jefferson Davis, and Covington. Blades has chosen to limit her definition of "heavily damaged and uninhabitable" to "structures that were damaged to such an extent as a result of Hurricane Katrina that they were beyond repair and had to be demolished following the storm." Pl.'s Mem. at p. 4. Blades asserts that CHL, through its affiliate, Newport Management, "routinely and systematically" force-placed insurance coverage with Newport Insurance Company on homes that were totally destroyed, reduced to a slab, or heavily damaged and rendered uninhabitable by Hurricane Katrina. *See id.* She also argues that CHL, Countrywide Financial Corporation, Newport Management, and Newport Insurance[1] are all affiliated companies that have profited from a scheme of forcing homeowners to pay insurance premiums. *See id.* Furthermore, Blades alleges that insurance policies were never issued by Newport Insurance on these homes, such that the homeowners could never file a claim due to the condition of the homes at the time the policies were issued. *See id.*

---

[1] Countrywide Financial Corporation is the parent company of CHL and Newport Insurance. Balboa Insurance Company was also named as a defendant in this lawsuit. In her Third Amended Complaint, Blades asserts that some of the force-placed insurance policies were procured through Balboa. However, homeowners whose policies were placed with Balboa are not mentioned in Blades' proposed class definition. Blades asserts in her Memorandum that all Mississippi policies were placed through Newport rather than Balboa. *See* Pl.'s Mem. at p. 2.

II.  DISCUSSION

A class action may only be maintained if all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure are met and at least one of the requirements of Rule 23(b) is satisfied.  *See* FED. R. CIV. P. 23.  The party seeking class certification has the burden of making this showing.  *See Gene & Gene, LLC v. Biopay LLC*, 541 F.3d 318, 325 (5th Cir. 2008).  For purposes of this opinion, the Court assumes, without deciding the issue, that Blades has satisfied the Rule 23(a) requirements.  As for the Rule 23(b) requirements, Blades contends that the proposed class should be certified pursuant to either Rule 23(b)(1)(A) or 23(b)(3).

A. The Requirements of Rule 23(b)(1)(A)

To certify a class pursuant to Rule 23(b)(1)(A), the party seeking certification must demonstrate that "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ."  FED. R. CIV. P. 23(b)(1)(A).  The United States Supreme Court has held that:

> Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997), *quoted in Robinson v. Wal-Mart Stores, Inc.*, 253 F.R.D. 396, 401 (S.D. Miss. 2008).

Thus, in order to justify certification under Rule 23(b)(1)(A), the party

seeking certification must show that inconsistent adjudications would cause the defendants to be unable to satisfy the judgments entered in some of the claims filed against them without contradicting the terms of other judgments entered with respect to the remaining claims. *See Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. App'x 350, 354 (5th Cir. Oct. 13, 2005). The possibility that the parties opposing class certification might be found liable to some of the claimants but not liable to others is insufficient to justify Rule 23(b)(1)(A) certification. *See Robinson*, 253 F.R.D. at 401 (*citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001)).

Blades' primary argument in favor of Rule 23(b)(1)(A) certification is the risk that separate lawsuits may result in different findings of liability. She maintains that *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003), supports her argument that certification is appropriate here. However, the court in *Smith* ordered certification primarily on grounds that nearly all claimants sought injunctive relief, which entailed separate demands in multiple state courts for a court order setting forth future procedures for the defendant to follow on insurance placement. *See Smith*, 216 F.R.D. at 372. Had the class not been certified in *Smith*, multiple courts might have implemented inconsistent procedures, likely making it impossible for the defendant to place insurance in a manner that simultaneously complied with all court orders. *See id.* Blades does not seek injunctive relief in the present case, nor are the claimants requesting that this Court prescribe procedures for Defendants to use when force-placing insurance in

-5-

the future.

Rule 23(b)(1)(A) certification is not appropriate here, as Defendants could be found liable to some claimants but not others without being placed in the position of having to satisfy one judgment without contradicting the terms of another. *See Corley*, 152 Fed. App'x at 354. Therefore, Blades has not demonstrated that the requirements of Rule 23(b)(1)(A) are satisfied.

B. <u>The Requirements of Rule 23(b)(3)</u>

Alternatively, Blades asserts that class certification is proper pursuant to Rule 23(b)(3). A party seeking class certification under this portion of the Rule must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

The Fifth Circuit has recently held that:

> The predominance inquiry requires a court to consider "how a trial on the merits would be conducted if a class were certified." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003). . . . This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* . . . . The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

*Gene & Gene LLC*, 541 F.3d at 326.

Blades contends that the claims she has asserted– conversion, unjust enrichment, fraud and deceit, and civil conspiracy– are common to all members of the proposed class. However, if it were only necessary for a class to name the same causes of action in order to demonstrate predominance, most every proposed class would be entitled to certification under Rule 23(b)(3). The inquiry must focus on the specific issues for trial which are presented by the facts and the legal theories asserted, not the causes of action asserted by the parties.

Blades also maintains that Defendants routinely and systematically force-placed insurance on properties which were totally destroyed, and that all Defendants reaped substantial profits since the insurer is a subsidiary of CFC. She contends that these issues predominate over all other issues, but she does not explain how these issues would control the outcome of this case. It appears to the Court that whether Defendants were participating in a common scheme is not the dispositive question here, since the matter for resolution is whether each individual claimant was or would be a compensable victim of such a scheme or practice.

Specifically, as Defendants assert, the separate inquiry required here would be whether each claimant had an insurable interest in his or her damaged home. The only claimants for which this inquiry would not be required would be those who, like Blades, were left with nothing but the foundation of their home. For all others, separate mini-trials would be necessary to determine which ones did or did not retain any insurable interest in what remained of the structure during the relevant time frame. How much of the structure remained after the storm, and the

length of time which passed between the date of the storm and the date of demolition of the structure would also necessitate separate inquiries.

Blades argues that the Fifth Circuit case of *Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999), supports her position that the insurable interest issue should not preclude class certification. In *Mullen*, casino employees sued their employer, asserting that they suffered from respiratory illnesses due to a faulty ventilation system in the casino. *See Mullen*, 186 F.3d at 623. The Court held that the seaworthiness of the casino and any negligent breach of duty were pivotal issues that were common to the class. *See id.* at 626. As a result, the Court held that the issue of whether the ventilation problem caused the illnesses each class member suffered, as opposed to smoking or other causes, could be tried in separate mini-trials after the common issues were adjudicated. *See id.* at 626-27.

However, as the Fifth Circuit recently explained in *Gene & Gene LLC v. Biopay LLC*, "*Mullen* . . . indicates only that commonalities among class members will sometimes, but not necessarily always, allow for a class-wide basis for deciding predominant issues." *Gene & Gene, LLC*, 541 F.3d at 326. The Court noted that the pertinent inquiry was not whether the defendant engaged in a common course of conduct, but whether that conduct provided a class-wide basis for deciding the predominant class issues of fact and law. *See id.* Based on the record here, this Court must conclude that *Mullen* is distinguishable. The *Mullen* court was presented with two pivotal issues common to the class, while Blades cannot demonstrate that there are common issues which will actually predominate in

-8-

controlling the outcome of the case.

Moreover, Blades intends to assert a fraud claim on behalf of the class. One of the elements of a fraud claim is reasonable reliance. *See Dominquez v. Palmer*, 970 So. 2d 737, 742 (Miss. Ct. App. 2007). The Fifth Circuit has held that a class cannot be certified where evidence of individual reliance will be necessary. *See Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 220 (5th Cir. 2003). In this case, the Court would be required to conduct a separate inquiry into whether each individual claimant reasonably relied on Defendants' alleged representations that insurance was required on their home.

In addition to the issues of insurable interest and reasonable reliance, separate inquiries in this case will also likely include whether Defendants were informed that each home was totally destroyed, which claimants were in fact "compelled to pay premiums" and which were not, the amount of any premiums paid by each claimant, and whether any premiums paid have been refunded to each claimant. It is difficult for the Court to conceive of many common issues, if any, that will require serious consideration either before or after the foregoing issues are individually resolved. Blades had the burden of establishing that common issues will predominate, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy. She is unable to meet that burden.

## III. CONCLUSION

Blades cannot demonstrate that common issues predominate over any issues

affecting only individual class members, nor can she show that prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications. Therefore, her Motion for Class Certification must be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Class Certification [212] filed by the Plaintiff, JoAnn Blades, should be, and hereby is, **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 27th day of March, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE